# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| VONZELL STAMPS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 06-0067-CV-W-FJG-P |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS**

Petitioner, Vonzell Stamps, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on January 23, 2006, seeking to challenge his 2000 convictions and sentences for first degree robbery and armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri. Petitioner raises four grounds for relief: (1) trial court error in admitting evidence of uncharged crimes; (2) trial court error in allowing the prosecution to elicit testimony that petitioner was involved in other robberies; (3) ineffective assistance of trial counsel for failing to raise, in petitioner's motion for a new trial, the issue of trial court error in admitting petitioner's statement's to police; and (4) ineffective assistance of direct appeal counsel for failing to raise, on direct appeal, trial court error in admitting petitioner's statements to police.

Respondent does not state a position as to whether petitioner's grounds for relief are exhausted. However, respondent contends that all four grounds for relief are without merit.

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> Peter Burnett was robbed on September 22, 1998, near his home in
> Brookside. Burnett walked from his home to Commerce Bank about
> 1:30 that afternoon. He withdrew all the money from his account, as
> he was moving to Chicago the following day. While he was in the
> bank, Burnett noticed a man standing at the next teller's window

getting change rolls. Burnett withdrew $785, and the man at the next window watched the transaction. Burnett also saw the man watch him leave the bank. After he left the bank, Burnett walked across the street to the grocery store. He was in the store for about five minutes. As he left the store and headed home, he saw a man walking towards him. At a distance of ten or fifteen feet, the man drew a gun and told Burnett to give him all his money. Burnett told the man he had no money. The man said, "[g]ive me the money you just pulled out of the bank." Burnett tried to walk around the man, but the man hit him in the head with the gun. The gun discharged, blowing out Burnett's eardrum and knocking him on the ground. The man grabbed Burnett's wallet and ran away.

Burnett described the man to police as a slender black man with a medium build, who was wearing blue jeans, a light colored shirt and a multi-colored jacket, and ball cap.

The next day the police, investigating a call they had received regarding suspicious activity at a bank north of the river, tried to stop Stamps. After a car chase, Stamps and Leonardas Murphy were arrested. Murphy dropped a gun as he exited the passenger side of the vehicle.

Stamps gave a statement indicating that he was in the bank with Burnett the previous day, and that he saw Burnett withdraw the money. Stamps said that he returned to his car and relayed this information to Murphy. Stamps said that as the two drove off, they saw Burnett walking. Stamps said he dropped Murphy off and drove around the block. Stamps said that when he returned to pick Murphy up, Murphy got in the car with his gun and told Stamps he believed he had shot Burnett.

Burnett told police that he believed the person he saw watching him in the bank was not the same person who robbed him. After his arrest, Stamps was placed in a line-up. Burnett was unable to identify Stamps as either the robber or the man watching him at the bank. Stamps was charged with robbery in the first degree and armed criminal action. At the preliminary hearing Burnett was again unable to identify Stamps.

A year later police showed Burnett a surveillance photo taken at Commerce Bank on September 22, 1998, the day of Burnett's robbery. The photo showed Burnett and the person standing next to him. The man was Stamps. Burnett told police that the person inside the bank with him was the same person who later robbed him.

-2-

Case 4:06-cv-00067-FJG   Document 10   Filed 04/19/06   Page 2 of 15

> Before trial[,] a hearing was held on defendant's motion in limine to exclude evidence that Stamps had been observed casing two other banks. That evidence included a videotape of Stamps walking into Mercantile Bank at 104th and Holmes, also on September 22, 1998, picking up deposit slips, and walking out. Tellers wrote down Stamps' license plate number and notified police.
>
> On September 23, 1998, police received a report that a bank north of the river was being cased by a person of the same description and with the same license plate number. The police response to that call led to the car chase and Stamps' arrest.
>
> The court ruled that the State would be allowed to present evidence of the events that took place at the bank at 104th and Holmes, because the videotape showed Stamps wearing the same clothes he was wearing in the surveillance photo from the bank in Brookside, and because that event explained how police obtained Stamps' license plate number. The court indicated it would not allow the introduction of evidence that the bank north of the river was being cased.
>
> Stamps objected and moved for a mistrial when Burnett, testifying as the State's first witness, told the jury that "[t]hey had me look at a picture from - there was - from a bank robbery, a previous bank robbery." The court sustained the objection and instructed the jury to disregard the statement but denied the request for a mistrial. Defense counsel also objected and moved for a mistrial when the prosecutor asked the State's second witness, Detective Batmer, if he was "informed of any other robberies that day." The court again sustained the objection and instructed the jury to disregard the question and answer but denied the motion for a mistrial.

(Respondent's Exhibit "F," pp. 1-4).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and

-3-

convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUND 1 - TRIAL COURT ERROR IN ADMITTING EVIDENCE OF UNCHARGED CRIMES**

In Ground 1, petitioner alleges that the trial court erred in admitting evidence that the Mercantile Bank of Kansas City, Missouri, called police to report a suspicious man "casing" the bank. Petitioner also alleges that the trial court erred in admitting evidence that petitioner was the subject of another police investigation into "suspicious activity taking place north of the river."

As a preliminary matter, this ground for relief raises an evidentiary issue. "Questions relating to the admissibility of evidence are matters of state law and generally do not give rise to constitutional errors which are subject to redress in federal habeas corpus cases." Harrison v. Dahm, 880 F.2d 999, 1001 (8th Cir. 1989) [quoting Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898 (1976)]. Only if the alleged error violates a specific constitutional right or is so prejudicial that it denies due process may a federal court grant habeas corpus relief on a state evidentiary issue. Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994).

Because petitioner not did properly preserve this ground for direct appeal, it was reviewed for plain error by the Missouri Court of Appeals. Currently, there is a split within the Eighth Circuit with respect to plain error review and procedural bar. One line of cases stands for the proposition

---

[1] In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

that "a properly limited plain error review by a state court does not cure a procedural default." *See e.g.*, Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996). Another line of cases holds that when a state court conducts a plain error review, we may also review for plain error. *See e.g.*, Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir. 1997); Sweet v. Delo, 125 F.3d 1144, 1152 (8th Cir. 1997). Because of this split in circuit authority, the Court is free to choose which line of cases to follow. *See* Sweet, 125 F.3d at 1152. In this case, as in Hornbuckle and Sweet, the Court will review Ground 1 for plain error, because the state court appears to have done so.

On direct appeal, the Missouri Court of Appeals held as follows:

> The standard of review for [Grounds 1 and 2] is plain error, as neither issue was included in the motion for a new trial nor was an objection to the testimony about a "suspicious party" call at the Mercantile Bank.
>
> ***
>
> Stamps has not met his burden of demonstrating a miscarriage of justice or a manifest injustice. *State v. Varvera*, 897 S.W.2d 198, 201 (Mo. App. 1995). Even assuming that Stamps' foray into another bank earlier the same day was indeed inadmissable as bad act evidence, any prejudice resulting therefrom was minimal. Other evidence consisted of Burnett's identification of Stamps as the person who robbed him, and Stamps admission that he was involved in the robbery. Any error in admitting the two statements that allegedly indicated Stamps' involvement in other crimes was cured by the court's instruction that the jury disregard the comments. *State v. Brasher*, 867 S.W.2d 565, 569 (Mo. App. 1993). Furthermore, the trial court's rulings were not error, plain or otherwise.
>
> Evidence of uncharged crimes, wrongs, or acts is only admissible to show motive, intent, absence of mistake or accident, a common plan or scheme, identity, signature method of operation, or to present a complete and coherent picture of the events that transpired. *State v. Williams*, 976 S.W.2d 1, 4 (Mo. App. 1998). Evidence of bad acts is admissible only if it is both legally and logically relevant. *State v. Cosby*, 976 S.W.2d 506, 513 (Mo. App. 1997). To be considered legally relevant, its probative value must outweigh its prejudicial effects. *State v. Dudley*, 912 S.W.2d 525, 528 (Mo. App. 1995).

> The evidence regarding the suspicious party call was both legally and logically relevant, and was not admitted solely to prove that Stamps had a propensity to commit robberies. The evidence, when viewed in the context of the events of the day, tended to show that Stamps had the motive and intent to rob Burnett, as the fact that he walked in and out of Mercantile Bank without conducting any business illustrated that he was looking for a customer to rob. The evidence also explained how police determined that Stamps was involved in the robbery of Burnett, by a comparison of the surveillance photos from the two banks.

(Respondent's Exhibit "F," pp. 4-6).

The resolution of Ground 1 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Terry Williams v. John Taylor, 529 U.S. 362, 412-13 (2000).[2]

Ground 1 is denied.

### GROUND 2 - TRIAL COURT ERROR IN ALLOWING THE PROSECUTION TO ELICIT TESTIMONY OF PETITIONER'S OTHER ALLEGED ROBBERIES

In Ground 2, petitioner alleges that the trial court erred when it allowed the prosecutor to introduce evidence that petitioner participated in other robberies during the prosecution's opening statement and direct examination of two witnesses.

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13.

Case 4:06-cv-00067-FJG   Document 10   Filed 04/19/06   Page 6 of 15

Like Ground 1, this ground for relief raises a state evidentiary issue, which ordinarily would not be redressable in a federal habeas corpus case, unless the alleged error violates a specific constitutional right which is so prejudicial that it denies due process. Harrison v. Dahm, supra; Clark v. Groose, supra. Furthermore, Ground 2 also was reviewed by the Missouri Court of Appeals for plain error. Therefore, this Court will review it for plain error as well. See Hornbuckle v. Groose, supra; Sweet v. Delo, supra.

On direct appeal, the Missouri Court of Appeals held as follows:

> Stamps also argues that the trial court plainly erred in failing to grant a mistrial when the prosecutor elicited testimony that gave the impression of involvement in other robberies. A mistrial is a drastic remedy, and is only appropriate where there is a "grievous error which cannot be remedied otherwise." *Varvera*, 897 S.W.2d at 201 (quoting *State v. Beal*, 470 S.W.2d 509, 516 (Mo. banc 1971)). The decision to grant a mistrial is a matter for the sound discretion of the trial court and the trial court's denial should be upheld unless there is a clear showing in the record that the trial court abused its discretion. *Id.*
>
> Stamps argues that the jury was given the impression that he was involved in other robberies when Peter Burnett testified that the police had him look at a picture "from - a bank robbery - a previous bank robbery," and when the prosecutor asked a witness if he was "informed of any other robberies that day."
>
> The trial court's instruction to the jury to disregard the answers cured any prejudice that may have otherwise resulted. The trial court was within its discretion in refusing to grant a mistrial. For the foregoing reasons we affirm.

(Respondent's Exhibit "F," pp. 4, 6).

The resolution of petitioner's second ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Terry Williams v. John Taylor, supra.

Ground 2 is denied.

## **GROUND 3 - INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

In Ground 3, petitioner alleges that his trial counsel was ineffective for failing to include in petitioner's motion for a new trial the claim that the trial court erred when it admitted petitioner's statements to the police.

In order to succeed on petitioner's claim of ineffective assistance of trial counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's actions in that there is a reasonable probability that, but for counsel's unprofessional acts, the results of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of petitioner's Rule 29.15 motion, the Missouri Court of Appeals rejected this ground as follows:

> In his first point on appeal, Mr. Stamps asserts his trial counsel was ineffective in two respects. First, he claims that his trial counsel was ineffective for failing to object during opening statement when the prosecutor discussed the contents of the statement he made to the police after he was arrested. Second, Mr. Stamps contends his trial counsel was ineffective for failing to include in his motion for a new trial, as a ground for relief, the court's denial of his motion to

suppress the statement he gave to Detective Batmer and overruling his objection at trial when the State attempted to introduce Mr. Stamps' statement into evidence.  Mr. Stamps contends that, as a result of both errors, his trial counsel failed to properly preserve for review on appeal the issue that the statement he gave to police was improperly admitted because it was obtained as a direct result of an unlawful **Terry** stop.  Because the basis of both Mr. Stamps' claims concern the lawfulness of the **Terry** stop this court will consider both claims together.

At the evidentiary hearing on Mr. Stamps Rule 29.15 motion, trial counsel testified that he did not include the issue of the trial court's denial of his motion to suppress Mr. Stamps' statement or overruling his objection at trial to the admission of Mr. Stamps' statement because "there was not a strong legal or factual basis to prevail on that issue."  Specifically, trial counsel stated that it was his belief that law enforcement had sufficient basis for the "original **Terry** stop."

Under the principles outlined in **Terry**, a police officer may make an investigatory stop of a person, in the absence of probable cause, when the officer has a reasonable suspicion that the person is engaged in criminal activity.  For such a stop to be permissible under the Fourth Amendment, it must be "based on reasonable suspicion supported by articulable facts that the person stopped is engaged in criminal activity."  **State v. Deck, 994 S.W.2d 527, 534 (Mo. banc 1999)**.

The principles of **Terry** have been applied to permit a police officer to briefly stop a moving vehicle to investigate, if the officer has a reasonable suspicion that its occupants are involved in criminal activity.  **State v. Franklin, 841 S.W.2d 639, 641 (Mo. banc. 1992)** (citing **United States v. Brignoni-Ponce, 442 U.S. 873... (1975)**).  Whether "reasonable suspicion" exists depends on the totality of the circumstances.  **Id. at 644.**  A suspicion is reasonable when the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.  **Terry**, **392 U.S. at 21**.... The standard is whether, prior to the seizure, the "detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." **United States v. Arvizu, 534 U.S. 266... (2002)** (quoting **United States v. Cortez, 449 U.S. 441... (1981)**).

In **State v. Miller**, the Supreme Court adopted a three-part test to determine whether an officer had reasonable suspicion to effectuate

-9-

a **Terry** stop. **894 S.W.2d 649, 652 (Mo. banc 1995)** (adopting test based on **United States v. Hensley, 469 U.S. 221... (1985).** Under the test, an officer has a reasonable suspicion to make a **Terry** stop based on a communication issued by another individual if (1) the communication "objectively supported the action taken by the officer;" (2) "the communication was issued on the basis of a reasonable suspicion that the occupant of the vehicle had been involved in a crime;" and (3) "the stop that in fact occurred was no more intrusive than would have been permitted [by] the officer that originally communicated the information." **Miller, 894 S.W.2d at 652.**

At issue in this case is the second requirement, i.e., whether the dispatch to Officer Mathews, who first attempted to stop Mr. Stamps, was based on reasonable suspicion. To determine whether reasonable suspicion existed, the [c]ourt in **Miller** set forth three standards depending on the party responsible for providing the dispatch. **894 S.W.2d at 652-653**. If the "dispatch is based upon information provided by another police officer, the court looks to whether the collective information known to all officers involved in the stop amounted to reasonable suspicion." **Id. at 653** (quoting **Franlkin, 841 S.W.2d at 644 n.6**).

In this case, the basis of Officer Mathews' action in attempting to effectuate a stop of Mr. Stamps' vehicle was a dispatch from law enforcement. The dispatch relied on by Officer Mathews was in turn based on information provided by detectives from the Robbery Unit. Specifically, the day before police officers attempted to stop Mr. Stamps' vehicle, law enforcement received a call from the bank at 104th and Holmes reporting suspicious activity. An employee of the bank provided Detective Batmer with a description of the suspect, including a surveillance photograph, and the license plate number, make, and color of the vehicle involved in the incident. On the day of the stop, the Robbery Unit received another call from a bank in North Kansas City reporting suspicious activity. In the second report, an employee of the bank provided law enforcement with a similar description of the individual who was in the bank at 104th and Holmes the day before and a description of the make and color of the vehicle the individual was driving, which also matched the description provided by the bank at 104th and Holmes.

Based on this second report of suspicious activity, detectives from the Robbery Unit attempted to locate the suspicious vehicle because they believed it was involved in a series of bank robberies. When the detectives saw one of the suspects exit a North Kansas City bank and

-10-

located the vehicle matching the description provided by the bank employees, detectives from the Robbery Unit called in uniformed officers and the police helicopter. Officer Mathews responded to this dispatch, located the vehicle, and attempted to effectuate a stop. However, when Mr. Stamps made eye contact with Officer Mathews, Mr. Stamps took off.

Therefore, before attempting to stop Mr. Stamps, Officer Mathews had received a dispatch provided by other police officers involved in the investigation of a series of bank robberies. The information known to the detectives, which formed the basis of the dispatch relied on by Officer Mathews, was based on two independent reports from bank employees. That information provided the same identifying information concerning an individual believed to be involved in a series of bank robberies and a description of the vehicle he was driving. Thus, when detectives observed an individual matching the description of the suspicious person provided by the bank employees leave a third bank and get into a vehicle of the same make and color of the vehicle also identified by both banks as involved in suspicious activity, they were in a position to conclude that the occupants of the vehicle may be involved in criminal activity. This information was relayed to Officer Mathews through a police dispatch. Consequently, this court finds that the collective information known to all officers involved in the stop of Mr. Stamps' vehicle amounted to reasonable suspicion sufficient to support a **Terry** stop. **See State v. West, 766 S.W.2d 103, 107 (Mo. App. 1989)** (police officer's stop of car they saw driving from direction of address of robber by large black male supported by reasonable suspicion when it was based on prior description of robber as large black man communicated to officers in police station for two weeks prior to arrest and radio dispatch of night of arrest, which included address of robbery, direction alleged robber was driving, and description of the assailant as heavy black man.). Therefore, any objection made by trial counsel to the admission of Mr. Stamps' statement or the denial of Mr. Stamps' motion to suppress, based on an argument that the officers lacked reasonable suspicion to effectuate a **Terry** stop, would have been non-meritorious. "Trial counsel cannot be found ineffective for failing to make non-meritorious objections." **State v. Brown, 950 S.W.2d 930, 933 (Mo. App. 1997).**

Further, the basis of Mr. Stamps' claim of ineffective assistance of counsel is that trial counsel failed to properly preserve for appeal the issue that the statement he gave to police was inadmissible because it was obtained as a direct result of an unlawful **Terry** stop. "[P]ost-conviction relief for ineffective assistance of counsel is limited to

-11-

errors which prejudiced the defendant by denying him a fair trial. **Thompson, 955 S.W.2d at 831.** Mr. Stamps, however, does not argue that his trial counsel's alleged errors affected his right to a fair trial. Rather, he merely claims that his trial counsel's errors affected his ability to appeal his conviction and sentence. For example, in his amended Rule 29.15 motion, Mr. Stamps alleged that his trial counsel's errors in failing to object during opening statement to the State's discussion of his statement to police and not including the allegations of trial court error surrounding the admission of his statement in his motion for a new trial, "failed to properly preserve this issue for more favorable appellate review." "A claim of ineffective assistance of counsel for failure to preserve issues for appellate review is not cognizable in Rule 19.15 proceedings." **Brown, 950 S.W.2d at 933. See also Thompson, 955 S.W.2d at 831.** Accordingly, the trial court did not err in denying Mr. Stamps' first claim of his Rule 29.15 motion. Point denied.

(Respondent's Exhibit "K," pp. 8-13) (footnote omitted).

The resolution of petitioner's third ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Terry Williams v. John Taylor</u>, <u>supra</u>. Applying the <u>Strickland</u> standard of review to the facts as set forth in the record, the Court finds that trial counsel was not ineffective.

Ground 3 is denied.

## **GROUND 4 - INEFFECTIVE ASSISTANCE OF DIRECT APPEAL COUNSEL**

In Ground 4, petitioner alleges that his direct appeal counsel was ineffective for failing to include in petitioner's direct appeal a request for plain error review of the claim that the trial court erred when it admitted petitioner's statements to police into evidence.

In order to succeed on a claim of ineffective assistance of direct appeal counsel, petitioner

-12-

must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's action in that there is a reasonably probability that, but for counsel's unprofessional acts, the result of the proceeding would have been different. <u>Strickland v. Washington</u>, <u>supra</u>; <u>Schaeffer v. Black</u>, <u>supra</u>. Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. <u>See</u>, <u>e.g.</u>, <u>Strickland v. Washington</u>, <u>supra</u>. Judicial scrutiny of counsel's performance must be highly deferential, <u>id.</u> at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u>

On appeal from the denial of petitioner's Rule 29.15 motion, the Missouri Court of Appeals rejected this ground as follows:

> In his second point on appeal, Mr. Stamps asserts his appellate counsel was ineffective for failing to assert on direct appeal that the trial court plainly erred in overruling his pretrial motion to suppress the incriminating statement he made to police. Mr. Stamps argues that it was unreasonable for his appellate counsel not to raise the issue of the trial court's denial of his motion to suppress without reviewing the entire record. Specifically, Mr. Stamps argues that his appellate counsel wrote and filed her appellate brief in this case without reviewing the suppression hearing transcript, and after receiving two extensions in which to file her brief, she failed to request a third extension to allow for additional time to receive the suppression hearing transcript. Finally, he contends that had counsel raised the issue on appeal, it would have been successful.
>
> The standard for demonstrating ineffective assistance of appellate counsel is high. **Middleton v. State**, **80 S.W.3d 799, 808 (Mo. banc 2002)**. In particular:
>
>> To support a [Rule 29.15] motion due to ineffective assistance of appellate counsel, strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record

> that a competent and effective lawyer would have recognized it and asserted it. The right to relief . . . due to ineffective assistance of appellate counsel inevitably tracks the plain error rule; i.e., the error that was not raised on appeal was so substantial as to amount to a manifest injustice or a miscarriage of justice.
>
> **Moss, 10 S.W.3d at 514-15** (citation omitted).
>
> At the evidentiary hearing on Mr. Stamps Rule 29.15 motion, appellate counsel testified that when she was preparing her brief in Mr. Stamps' appeal, she spoke with trial counsel, reviewed the police reports, and concluded that law enforcement had reasonable suspicion for the **Terry** Stop. Consequently, appellate counsel concluded that any appeal based on such a claim would have been without merit. As discussed above, this court agrees with appellate counsel that law enforcement had a reasonable suspicion for the Terry stop and appellate counsel would not have been successful in raising the issue on appeal. Counsel cannot be deemed ineffective for failing to raise a non-meritorious point on appeal. **Middleton v. State, 103 S.W.3d 736, 737 (Mo. banc 2003)**. Accordingly, the trial court did not err in denying Mr. Stamps' Rule 29.15 motion. Point denied.

(Respondent's Exhibit "K," pp. 13-15).

The resolution of petitioner's fourth ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Terry Williams v. John Taylor</u>, <u>supra</u>. Applying the <u>Strickland</u> standard of review to the facts as set forth in the record, the Court finds that appellate counsel was not ineffective.

Ground 4 is denied.

**ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied; and

(2) this case is dismissed with prejudice.

                                          /s/ Fernando J. Gaitan, Jr.
                                          FERNANDO J. GAITAN, JR
                                          UNITED STATES DISTRICT JUDGE

Kansas City, Missouri
Dated: 4/19/06